The next case today, Lionbridge Technologies, LLC versus Valley Forge Insurance Company, appeal number 21-1698. Attorney Stolakis, please introduce yourself for the record and proceed with your argument. Thank you, your honors, and may it please the court. My name is Nicholas Stolakis, and I represent the Plaintiff Appellant, Lionbridge Technologies. I would like to reserve three minutes for rebuttal. You may. Thank you. Your honor, there are two independent reasons that the decision of the district court should be reversed. First, the court erred in denying Lionbridge recovery of the unpaid defense costs for the period of time that Valley Forge undertook that defense. Second, the court erred when it decided that the underlying allegations, allegations that Valley Forge itself said for 16 months did trigger coverage, did not state a claim within the scope of the policy. I'd like to address both points and then touch on the discovery issue, if time permits. Turning to the first issue for unpaid defense costs, Massachusetts is one of the most. Yes, it's yours. I'm a little confused. In addressing this issue, you're assuming there's no duty to defend? Well, yes, correct, your honor. Our argument is even if the court were correct on its ruling on the duty to defend, we are still entitled to recover the unpaid defense costs for the period of time that Valley Forge did defend. It seems to me you've got the issues in what is the reverse of what I would think of as a logical order. Yes, your honor. Isn't the first question we should address whether or not there was a duty to defend? Because if there is a duty to defend, that moots what you described as the first issue. I agree, your honor. If you decide that there is a duty to defend, then you do not need to decide the second issue, the first issue that we had raised. I'm happy to argue that first, we think that under the allegations in the underlying complaint here by TransPerfect, there was a duty to defend. And your review of this is de novo. And the bar for triggering a duty to defend is not high. Any allegation showing a possibility that the underlying claim falls within coverage triggers the duty to defend here. Paragraph 127 of that complaint, your honor, Valley Forge itself, on its own, without prompting from us, identified this immediately after tender as triggering the duty to defend. It said that under those allegations, they could potentially seek damages for libel, slander, or disparagement. Valley Forge has never sought in any pleading, any declaration that these allegations did not trigger coverage, who submit that if insurers like Valley Forge look at a complaint like this carefully with their coverage counsel and say that there's a duty to defend, they maintain that conclusion throughout the pleadings in this case. They offer to stipulate the same, all for a year and a half, where the language of that complaint, underlying complaint, has not changed. Nothing has changed. Are you arguing estoppel? No, we're not arguing estoppel. We're arguing that the question... Isn't the point whether there's coverage or not? It was if there's not coverage, it makes no difference that they claim there was coverage, unless you're claiming estoppel. But if there is coverage, it makes no difference what they say. So I guess at most what I see you getting is some coloration that even a sophisticated insurer familiar with its own language agreed with what you're now saying. But in terms of your legal claim, I think you're really asking us to look at that 127 and make a judgment about it. In the end, yes, Your Honor. And I think under the Billings case, what Valley Forge thought the underlying allegation said is relevant to this court's determination. So you're correct, it does provide the relevant coloration. But I think if you look... Is it only relevant or is it probative to some extent? Well, I would say that it's probative of the reasonableness of the understanding that 127 did trigger the duty to defend. Because again, Valley Forge has never said it made a mistake. In all of his filings here, it has never said it made a mistake. And nothing changed. Not a single word has changed. And whatever standard... But they did so under a reservation of rights. So it cast doubt from the beginning that they questioned the availability of the coverage. Yes, they certainly did. And if you look at that reservation of rights, Your Honor, if you look at what they said in that reservation of rights, they reserve their right to disclaim coverage if they're in response to additional information or future developments. And they reserve their right to withdraw from the defense if the underlying suit were amended or the triggering allegations were dismissed. Now, at the end of their letter, they do have some broader language that appears in the conclusion. But that language appears to me to be in summary. But it's difficult to read their letter and to understand why an insurer should be permitted to reserve its right to change its mind in a vacuum a year and a half afterwards. Whatever standard this court adopts should not encourage an insurer to have an unlimited time to change its mind. I think, counsel, that you've indicated that the Massachusetts standard for coverage is very broad, reasonably susceptible, and so forth. But is there any limiting principle to the Massachusetts coverage? Well, certainly. The underlying allegations have to roughly sketch a claim. And if you look at paragraph 127, paragraph 127 very, very clearly alleges that Lionbridge misrepresented certain litigation and introduced doubt about the stability of TransPerfect. You know, that in itself roughly sketches a claim for some form of defamation and disparagement of TransPerfect's products and services. It shows, it alleges, that TransPerfect was, Lionbridge said, TransPerfect was not stable. Which, when you're talking about a company, is a statement that goes directly to slander, libel, or disparagement. It doesn't go to libel unless it's in writing. Well, they didn't allege, correct your honor, they didn't allege whether it was in writing or in spoken word. And again, we're not talking about whether this stated a 12b6 claim, whether it roughly sketched a claim. And I'm not aware of any authority that says that to roughly sketch libel, they have to allege that it was in writing specifically. Let's assume, here's what's troubling me, let's assume that there's coverage for defamation, but there's an exclusion for knowing intentional conduct. And let's assume the insured is then sued by a private individual who alleges defamation, a pure defamation claim against the insured, but wants to get punitive damages, so includes the word knowing in the complaint. Is there coverage then? In other words, the complaint said, you knowingly defamed me by knowingly stating a false fact that has caused me injury. So I understand, I understand the question, your honor. And to be clear, there's no allegation in paragraph 127. Whether there would be coverage there, I mean, I think we would have to look at the complaint more broadly. I don't change the hypothetical, it's the one I just gave you. What you've got is you've got a lesser included claim. All the elements are there, plus the case law in the briefs on addressing how, in the coverage scenario, you deal with the fact that a claim may be covered, but it has an additional element that isn't necessary to the success of the claim. Well, your honor, here, and I want to answer your hypothetical. To be perfectly honest, I'm not sure whether I would agree that there is or isn't coverage there, but I have to come back to the language of paragraph 127, which doesn't necessarily allege any intentional conduct. Well, now you're fighting the hypothetical, and I've done that twice, so we can read it. And we realize it says bad faith, it doesn't say knowing, but why don't you assume I may be reading bad faith to be the equivalent of knowing, and then asking, do you still have an argument? If you read bad faith to include knowing, recognizing, again, that I don't agree with that premise. To be honest, your honor, I don't know that I would agree that there is no coverage. Certainly, our case would be weaker. Okay, why would there still be coverage? What's your theory? Well, I think you have to look at the rest of the allegations in the complaint to know whether a knowing allegation is true surpluses, or if that's the case, which we cited. They were allegations there of groping and raping and sexual assault, but it did not necessarily trigger the exclusions, because some of the allegations could sound in sexual harassment. So the court there didn't narrowly look at any specific allegations, it looked at them in the context of the rest of the complaint. And I'm not trying to duck your just focusing on particular allegations and not knowing what the rest of the complaint is in your hypothetical is alleging. So here, of course, bad faith does not necessarily include intentional conduct. Unless you have more questions on that, I'd like to go back to the first argument that I had with, which is their obligation. And even if you don't agree with us, and I think you should, even if you don't agree with us that there is a duty to defend here, then that leaves the period of time that they were defending. And my points here are simply the following. You have the SJC, the appeals court, or this court that implies any exception to the rule articulated in Morrison. And I understand it was slightly different facts, but it did articulate the rule and this court is trying to predict what the SJC would rule here. You have the other lines of authority that support that, their recoupment cases, Welsh Food and Coinstar, which both sides and they have never said was wrong. That's time. Thank you, Your Honor. Thank you. At this time, Attorney Stolakos should please mute his audio and video. Attorney Besh, please unmute and introduce yourself on the record to begin. Good morning and may it please the court. William Besh for Valley Forge. Maybe I can start by addressing Judge Kayada's hypothetical. I think as I heard the hypothetical, the answer is straightforward. That is, if there is a claim that's within the coverage, but there is also a way of proving the claim in a scenario in which the conduct is merely then the insurer must defend unless and until it can establish or the development of the underlying case establishes that there is no way that the case can turn out, can succeed for the plaintiff other than through proving intentional conduct that would trigger the exclusion. And I think that's what was happening in the Metropolitan Casualty and Morrison case that we were just hearing about, which was a case involving an assault on a police officer. And the question was what the insurer needed to do to establish that that had to be an intentional assault that no longer had the coverage. Until it could establish that fact, the insurer had to defend. And it thought it had proven that it had to be intentional because of the guilty plea. The SJC said, nope, that's not enough. We're going to send it back down to the court to figure out if and when you did show, you, the insurer, did show that that exclusion applied. So I think it's the routine case. And the example in the sexual assault context that I would cite is the Doe case that we cited in our brief in which the SJC said, no, you can't, even if the plaintiff wants there to be coverage and therefore includes a negligence claim, you can't have negligent sexual assault of a child. So we're not going to require the insurer to pretend that this could be a negligence case. This is an intentional conduct case and the insurer is entitled not to cover. So let me follow up with this specific one. So if the insured is sued for stating facts that call into question the stability of the TPG for the purpose of damaging TPG and cause injury, wouldn't that be a covered claim? No, for two reasons. One is that I don't think if I only alleged in a complaint that a defendant somehow introduced doubt regarding the stability of my company, that that bare allegation alone is enough to make out a slander claim because it's not clear enough. And what we're talking about here is not a... Which element is missing? A statement of fact. What fact did I state? Was it a matter of an opinion or was it a matter of fact? Was it false? What false fact did I state? Don't they allege that you're insured misrepresented the nature of underlying litigation and introduced doubt regarding the stability of TPG? That sounds like a misrepresentation of fact. They misrepresented the litigation. That's not a statement about TPG. The litigation is an internal litigation that triggered the corporate auction and that was a fight between the co-founders of TPG. Nothing to do with the products or services or TPG as a business. There was internal strife. We don't know how they misrepresented that litigation, but it's not a misrepresentation about TPG. It's a misrepresentation about the litigation for all we know. I think it's important to keep in mind we're talking about a sentence out of a 54-page complaint. Judge Selye asked whether there's any outer limit to the Massachusetts standard. I think the answer is yes, there's absolutely an outer limit. What we're trying to do here is guard against the situation where the insurer denies a defense because there's no covered claim. Then a year into the litigation, it turns out it is a defamation case. It was in there all along and the insurer is suddenly defending themselves in a case that they should have had coverage for. What bothers me most of all is that in your reservation of rights letter, you seem to me to admit that there is a covered claim here. That the complaint, as it's read by Valley Forge when it first gets it, does roughly sketch a claim or a possible claim. You reserve all your rights if if something gets clarified or something changes, but nothing really changes. I wonder why you're not, I'm not talking about estoppel, I'm talking about the probative force of that, for lack of a better term, what I'll call an admission in the reservation of rights letter itself. I don't understand how you get around that. Well, one thing to say at the outset about that is it is governed by estoppel and unless that statement had some effect, I don't think it... I think under Billings, it may have some evidentiary value. I agree that it's not an I don't think that's correct, actually. It's a question of law. Let me get to the substance of the point because I think it needs to be understood in the context of that letter. As I read that letter and as I think as the district court read it, that is the explanation for why despite the fact, and this is a typical reservation of rights letter, it has to provide a reason for why you're providing a defense at all. It's true that the person who initially, I think to her credit, made the decision to err on the side of providing a defense and trying to resolve what turned out to be the overwhelming issues about the scope of the defense, she simply was explaining what she thought the hook was. I don't think she was intending to say in some thoroughly analyzed way that we agree with you or we concede and that clearly was not the case because Lionbridge itself through its own outside coverage council continued to argue in subsequent letters about whether there was coverage and whether the exclusions applied which she had cited and so forth. It's really unusual, isn't it, for an insurer? All you need to make a duty to defend is the determination, is the complaint and the policy. You don't need anything else. It's really unusual when an insurer after having both of those and announces that it will defend the case is subject to an amendment to the complaint and then changes its mind and months later then says, oops, there is no duty to defend. In my experience, that's pretty unusual. Not at all, your honor. The only thing that changed was that immediately after Valley Forge began funding the defense, all of these disagreements broke out and took up all of the party's bandwidth and time about what Valley Forge would be asked to pay for, whether it would have to pay for another party's defense, whether it would have to pay $1,500 an hour and that's what dominated the correspondence. The fundamental question of the duty to defend really came to the fore when Lion Ridge itself moved for summary judgment and asked for a declaration on the duty to defend. At that point, Valley Forge then was prompted to look at the focus and said, in addition to arguing about these subsidiary issues, we're going to fight on the duty to defend. Yes, there was a change of focus, a change of strategy. Different people were involved with different opinions about the issue and we changed our opinion, but the court was asked to look at that and to consider whether there was anything we did that created an estoppel or what to make of that initial letter and the period of about 25 days or something like that where we said we might even stipulate on the duty to defend in order to fight about these other things. The court said, there's no estoppel and I need to decide on the duty to defend issue on merits and went ahead and did so and I think she did that correctly. Anything else? No, your honor. Thank you. Thank you. At this time, Mr. Pesch, please mute your audio and video. Mr. Stolakis, you have a three-minute rebuttal. Please turn on your audio and video and reintroduce yourself on the record. Thank you. Nicholas Stolakis again for Lionbridge Technologies. Your honor, I just have three points that I'd like to make. The reservation of rights letter was made by a claims representative and then overseen by coverage counsel almost immediately. This wasn't any mistake. It was based on the considered judgment of what the underlying allegations stated, allegations that changed. Mr. Pesch seems to now admit that the change of view was a change in strategy. I don't know of any case that allows an insurer to simply change its mind because of a change in strategy. And finally, what they're saying, they interpreted the lawsuit different from other counsel. Well, you know, to me, that itself is probative that the underlying complaint did state a claim within coverage. If coverage attorneys in different places can come to different conclusions, then the very low bar that is set by the duty to defense standard would seem to me to be met in this case. And that's all we're talking about is whether that was met. And as I said before, any rule that you create should not give insurance companies the incentive to have an unlimited number of months to change their mind, as Valley Forge did here. Unless the court has further questions for me, I'm happy to rest on the bruise. What was the fact that was misrepresented by Lionbridge according to the allegations of the I think the fact at issue there went to the stability of TransPerfect. It alleges the result, alleges some arguable condition of harm, but how did it introduce? I mean, it could have introduced doubt regarding the stability of TBG by truth. It could have, or it could have introduced it through a misrepresentation, but it says misrepresented the nature of the underlying litigation and introduced doubt. You know, if this were something that we were, if we were talking about the duty to indemnify, we would be looking at this through a finer lens, but here it's simply the duty to defend. And those allegations themselves, we don't have to pass the Rule 12b6 standard. They don't even have to allege defamation or disparagement and account. They simply have to roughly sketch a claim, and there are cases saying that a complaint does just that even though what is roughly sketched would not be within the jurisdiction of the deciding tribunal. It's a very, it's a very low bar. That's time. Thank you, Your Honor. That concludes argument in this case. Attorney Stilakis and Attorney Bess, you should disconnect from the hearing at this time.